**IN THE UNITED STATES FEDERAL DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**

| | |
|---|---|
| **Tyrita Thomas**<br>**4359 F St SE.**<br>**Washington, DC 20019**<br>    **Plaintiff,**<br><br>    **vs.**<br>**Washington Gas Light Company,**<br>**1000 Maine Ave. SW. Washington,**<br>**DC 20024; & Temporary**<br>**Solutions.10550 Linden Lake**<br>**Plaza. Suite 200. Manassas, VA**<br>**20109;**<br>    **Defendants.** | Case No:_____<br><br>**Jury Demand**<br>For Violations of 42 U.S.C §1981. |

## INTRODUCTION

Plaintiff Tyrita Thomas, an African American female, files this action against the Defendants and joint employers Washington Gas Light Company (Washington Gas) and Temporary Solutions, for retaliation under 42 U.S.C §1981.

Thomas an employee of the Defendants was subject to race based discrimination and harassment by her Caucasian supervisor Thomas Robb from December 2019 to March 2020, when Robb informed Thomas and his black staff, that because of his father's inter-racial marriage to a Black female, he was called a "nigger lover." Thomas was deeply offended by the use of this racial slur. Robb further engaged in racial stereotypes, by again,

informing Thomas that Blacks kill each other, and/or are violent towards each other.

When Thomas engaged in protected activities by complaining about his behavior to Washington Gas, and Temporary Solutions in March 2020, Thomas was fired from her employment in June 2020, and/or replaced by individual(s) outside her protected class. She was also not re-hired by the Defendants.

Consequently, an action for violations of 42 U.S.C §1981 now follows, against the Defendants Washington Gas and Temporary Solutions.

## Part I. Parties.

1. Plaintiff Tyrita Thomas is a 55-year-old African American female. She was employed by Washington Gas and Temporary Solutions from April 2018 to June 2020. At the time of her termination, Thomas earned an annual wage of $36,500. Thomas was an employee of the Defendants, under 42 U.S.C §§2000 *et seq.*, for purposes of Section 42 U.S.C §1981.

2. The Defendant Washington Gas Light Company is a public utility holding company that serves customers in DC, Maryland and Virginia. It has more than 100 employees. Its headquarters are in Washington, DC. Washington Gas is an employer of the Plaintiff under 42 U.S.C §§2000 et seq, for purposes of Section 1981.

3. The Defendant Temporary Solutions is a staffing company and a subsidiary of Employment Enterprises, Inc. (EEI). They provide workforce solutions to employers, including in this case, Washington Gas. Temporary Solutions is an employer of the Plaintiff under 42 U.S.C §§2000 *et seq.*, for purposes of Section 1981.

## Part II. Jurisdiction & Venue

4. This Court has subject matter jurisdiction over federal law claims.

5. Venue is also proper in Virginia, because Thomas was employed in Northern Virginia, and was also removed and terminated from her assignments in Virginia.

## Part III. Exhaustion of Administrative Remedies

6. There are no exhaustion requirements for claims under 42 U.S.C §1981. Additionally, the claims are also being filed within 4 years of the Plaintiff's termination.

## Part IV. Statement of Facts.

7. Plaintiff Tyrita Thomas is a Black female. She was employed at Washington Gas as part of "Temporary Solutions" placement of employees with Washington Gas.

8. Temporary Solutions had a contract for staff and services with Washington Gas.

9. Temporary Solutions placed employees at Washington Gas.

10. Thomas was employed by Washington Gas and Temporary Solutions from April 2018 to June 2020. Thomas was employed as an administrative assistant/proctor. Both Washington Gas and Temporary Solutions are <u>joint employers</u> of the Plaintiff, insofar as Washington Gas set the hours and schedule of employment, provided Washington Gas equipment for Plaintiff to work on, supervised the Plaintiff, and also ultimately terminated the Plaintiff. Washington Gas had control over the Plaintiff.

11. Sometime in October 2019, Thomas Robb, a Caucasian male, began to supervise Thomas, and the rest of the predominantly African American female staff.

12. Sometime in November 2019 – December 2019, Robb informed Thomas and his predominantly Black staff, that when his (Robb) father married a Black female, he became homeless, because the neighborhood he was living in, did not like Black people.

13. Robb stated that as a result, his family had to live in a trailer park, and that he (Robb) was bullied and beaten up, for being a "nigger lover."

14. Thomas was deeply offended by Robb's express racism, and the use of an offending racial slur. She was so disturbed by his words that she was unable to concentrate at work.

15. In December 2019 or January 2020, Robb also informed Tamara Schweinsberg (Caucasian female), an employee at Washington Gas, while directing his attention to the Black staff, "you see how I talk to them."

16. Schweinsberg was the supervisor of the Education Technology group.

17. One afternoon also in January 2020, Tyrita Thomas, Contressa Keitt & Deidre Young (Black females) were speaking to each other.

18. Robb joined the conversation.  Thomas, Keitt and Young were speaking about different life experiences and the impact they had on them.

19. Robb then proceeded to talk about what Donald Trump was doing for the country and that President Barack Obama had the worst record ever and how he (President Obama) did nothing for his own people.

20. Thomas, Keitt and Young did not agree and chose not to acknowledge it.

21. Then Robb suddenly says "Well, you people kill each other every day!"

22. To which Young in her shock said, "Really, are you serious?"  Thomas told Robb, "I am not having this conversation." Thomas walked away.

23. Young then told Robb, that she (Young) was done with the conversation. Keitt too appeared shocked with Robb's discriminatory views and racial stereotypes.

24. Thomas and Young were also <u>deeply offended</u> by the racist remarks and stereotypes from Robb. It affected their ability to concentrate at work.

25. Young knew that any conversation with Robb concerning Donald Trump was sensitive because Young had previously witnessed on two occasions very heated discussions between him and Marco Smart (Caucasian male), a former colleague at Washington Gas. Smart was the Learning Management Systems administrator.

26. In Feb 2020, Thomas engaged in <u>protected activity</u> with Wilder Reed, the Union President at Washington Gas and informed him about the race discrimination that she was facing at work from Robb. Young also told Reed, about the "you see how I talk to them" comment by Robb. Reed informed Thomas that he would bring Robb's actions of discriminating against his employees to the attention of Washington Gas and its HR Department.

27. Thomas later learned that Reed had in fact followed through in reporting her race discrimination complaints

28. During this period, Robb admitted that he was asked by Washington Gas' HR to attend meetings with HR, or take anti-

discrimination and/or EEO classes, and it came about as a result of complaints received by Washington Gas' HR department.

29. Also, in Feb 2020, Thomas had another African American female colleague of hers, Deirdre Young, inform Thomas that she (Young) was very upset at Robb, because Robb had told Young, that Young reminded her (Young) of his stepmother, this after Young would assert herself at the workplace.

30. Robb's step mother was Black, and Robb would frequently state that when his father (a White male) married his stepmother (a Black female) "they were kicked out of their community and became homeless because his dad had married a Black woman."

31. Robb would regularly bring up his Black stepmother, and imply that he, too, was part of the Black struggle or was familiar with Black struggles and racism against Blacks.

32. <u>Robb's racial harassment made it difficult for Thomas to concentrate at work</u>, since Thomas never knew, when Robb would spout another racial, racist or stereotypical remark.

33. Late February 2020 or early March 2020, Robb insisted on having a conversation about slavery. He would say Black people are to be enslaved and that he could show Thomas a link where it is taught today at a college in California. Robb pulled his phone out and said, "here, look I can show it

to you." Thomas again reiterated to him (Robb) that she (Thomas) will not engage in conversations concerning race with him (Robb).

34. Young told Robb to not have these discussions with her (Young) as she found them to be offensive, racially insensitive, and harassing.

35. Sometime in March 2020, Thomas again engaged in protected activity, by having a telephone conversation with Human Resources' Gwendolyn Drain, Sr. Staffing Specialist, at Temporary Solutions. Thomas told her about Robb's past racist remarks regarding Black individuals and that Robb was engaging in discrimination in the workplace.

36. Thomas asked Drain to help stop the discrimination and harassment at work.

37. Drain responded by saying, "that's a hostile work environment!" Drain also advised Thomas that if she wanted Drain to prevent further racial harassment, Thomas first needed to resign. <u>Thomas said that she was not going to resign</u>.

38. Thomas then asked Drain to meet with her in person. Drain said she was <u>not able to help her</u> (Thomas), until such time Thomas resigned from the position at Washington Gas.

39. By so suggesting, Drain abdicated her responsibilities as a HR person to combat discrimination in the workplace. Drain

failed to root the discrimination out. customer, Washington Gas.

40. Soon after, because of COVID-19, the employees at Washington Gas and Temporary Solutions were furloughed.

41. On June 5, 2020, Thomas learned that all but her and her colleague Deidre Young were called back to work by Washington Gas and Temporary Solutions. Young, like Thomas, had also engaged in protected activity by complaining about Robb to the Defendants.

42. When Thomas asked Drain why she was not called back to work with the rest of her colleagues, she was told by Drain, "I don't know. Who knows what Tom [Robb] is doing? He is in a world of his own."

43. Thomas then learned that three (3) new individuals were hired by Washington Gas and/or Temporary Solutions as proctors.

44. None of these three persons engaged in protected activities in 2020.

45. Washington Gas and Temporary Solutions also replaced Thomas with persons outside her protected class, and or, individual(s) who did not engage in protected activities.

46. In the latter half of 2020, Washington Gas conducted an internal investigation surrounding the allegations of discrimination from Young This internal investigation

concluded that Robb engaged in conversations around race that were "ill-advised." Robb was issued a written disciplinary warning by Washington Gas. He was also ordered to take anti-discrimination and anti-harassment training.

## Part V. Cause of Action.
### Count I. Retaliation under Section 1981.

77. Plaintiff reincorporates by reference all the allegations above.

78. At all pertinent times Defendants were employers subject to the provisions of 42 U.S.C §1981.

79. At all pertinent times, Plaintiff was entitled to protection under Section 1981.

80. Section 1981 makes it unlawful to retaliate against an employee for bringing a complaint of discrimination.

81. Plaintiff engaged in protected activities and opposition to practices made unlawful under Section 1981 while employed by Defendants. Plaintiff also reasonably believed, and in good faith, that she was complaining about race discrimination to the Defendants in February 2020 and March 2020.

82. As a result of her protected activities and opposition to practices made unlawful under §1981, Plaintiff was subjected to adverse employment actions, that may well dissuade an employee from filing a claim of discrimination.

Thomas was told to resign and then was told that she would not be returning back to work, unlike the rest of her colleagues who had not engaged in protected activity.

83. A casual connection exists between Plaintiff's protected activities in February 2020 and March 2020, and the adverse employment actions taken by Defendants in March 2020 and June 2020.

84. Defendants acts of retaliation caused Plaintiff to suffer economic losses, physical harm, mental and emotional distress, embarrassment, humiliation and indignity.

85. This intentional, reckless, and/or willful retaliation on the part of Defendants constitutes a violation of Plaintiff's statutory rights under §1981.

47. By reason of Defendants' retaliation, Plaintiff is entitled to all legal, compensatory, punitive and equitable remedies under §1981, including her attorney's fees and costs.

**VI.   PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Tyrita Thomas prays as follows:

    a. That the Court enter judgment against the Defendants Washington Gas and Temporary Solutions;

    b. That the Court award Plaintiff damages in the amount equal to all of her accumulated lost wages and

        benefits, including back pay, front pay and benefits, punitive damages, and compensatory and emotional damages for the financial, physical and emotional harm caused by Defendants including pre-judgment and post judgment interest and any other damages permitted under 42 U.S.C §1981, in an amount to be determined by this Court and a jury; and

   c. That the Court also award Plaintiff payment of all fees, costs and expenses inclusive of attorney's fees and expert fees, along with all including pre-judgment and post judgment interest and any other legal and equitable remedies available to the Plaintiff under 42 U.S.C. §1981, and/or the powers of this Court.

**VII.**     **JURY DEMAND**

Plaintiff requests a trial by jury on all counts.

Dated: January 30, 2024             Respectfully Submitted,

**Tyrita Thomas**


By Counsel:


/s/Monique A. Miles_____
Monique A. Miles, Esq. (VSB#78828)
Old Towne Associates, P.C.
1500 Woodbine Street
Alexandria, Virginia 22302
Phone: (703) 519-6810
mmiles@oldtowneassociates.com

Page **12** of **13**
Thomas v. Washington Gas and Temporary Solutions

1
2         /s/A.J Dhali, Esq.
3         *(Pro Hac Vice Admission Pending)*
4         DC Bar No. 495909
5         Dhali PC
          1629 K Street, NW, Ste. 300
6         Washington D.C. 20006
7         Telephone: (202) 556-1285
          Facsimile: (202) 351-0518
8         ajdhali@dhalilaw.com
9
10        ***Attorneys for Plaintiff Tyrita Thomas***